## THOMAS B. CODDINGTON & others *vs.* WILLIAM W. GODDARD.

A broker, through whom an offer was made in Boston by a principal doing business in New York, for the purchase of a quantity of copper, was asked by the seller whether intelligence had been received in New York of any advance in the price of copper in Europe, and replied, " None that I know of," and the seller then agreed to sell upon the terms proposed by the broker. Intelligence of such advance in price had in fact been received in New York, and was known to the broker's principal there, before the contract was made, but was not known to the broker; and this intelligence would have been of material importance to the seller in determining whether he would sell on the terms proposed. *Held*, that the contract was valid, and might be enforced against the seller. *Held, further*, in an action so to enforce it, that it was not competent for him to show that, at the time the contract was made, there was in the market and among sellers of copper a general expectation that the next steamer, arriving from Europe, would bring intelligence of an advance in the price of copper.

An entry of a contract of sale and purchase, made by a broker in his books, in the regular course of his business, which states the date, the full names of both parties, connected by the word " to " in this form, " W. W. G. to T. B. C. & Co.," a description of the goods sold, and the terms of the bargain, although not subscribed by any one, is a sufficient memorandum in writing, within the statute of frauds.

In an action to enforce a contract for the sale of goods, the only legal evidence of which is an entry in the books of a broker employed to make this single contract, parol evidence is not competent to show that the contract thus stated, if within the broker's authority, was different from the contract actually made through him; but is admissible to show that the contract as thus reduced to writing differs from that which the broker was authorized to make.

At the trial of an action by the purchaser to recover damages for a failure of the seller to deliver a quantity of copper, it appeared that an offer was made to the seller through a broker, for the purchase of three hundred thousand pounds of copper; that after some conversation the seller offered to sell two hundred thousand pounds upon the terms proposed, reserving the right to add one hundred thousand pounds more on the same terms, the next day, if he wished; and that the broker, after saying it was a sale, entered the transaction in his books, as a sale of two hundred thousand pounds, without any mention of a right of the seller to add one hundred thousand pounds more the next day. The presiding judge refused to instruct the jury, as requested by the defendant, that if they found it was part of the agreement that one hundred thousand pounds of copper might be added by the seller on the next day, the broker's entry was insufficient as a memorandum in writing under the statute of frauds; but did instruct them that the broker must record, in all essential particulars, the exact contract he had authority to make; that if they were satisfied that he omitted any essential element of it, there was no valid contract; that the omission to state in the memorandum the defendant's right to add one hundred thousand pounds would not invalidate the contract, unless they should find that the sale of the two hundred thousand pounds depended upon the right to deliver the one hundred thousand pounds additional on the next day; but that if they should find that the right to deliver the one hundred thousand pounds was made a condition of the bargain, and was so far an element of it, that none of it was to be binding unless this was, then the omission to insert it in the memorandum would be fatal to the action. *Held*, that the defendant had no ground of exception.

ACTION OF CONTRACT to recover damages for not delivering two hundred thousand pounds of copper alleged to have been sold by the defendant to the plaintiff. Trial and verdict for the plaintiff before *Merrick,* J., who reported the case to the full court, in substance as follows :

Charles Canterbury, called as a witness for the plaintiffs, testified that he was a merchandise broker; that on the 9th of December 1856, acting under instructions contained in a telegraphic despatch from the plaintiffs, merchants in New York, which he received between two and three o'clock in the afternoon, he called at the defendant's place of business in Boston, and not finding him there, followed him to his house, where he had an interview with him, and stated to him the plaintiffs' offer to buy three hundred thousand pounds of copper, at twenty four and a quarter cents per pound, on a credit of nine months, with satisfactory paper, and deliverable on board a vessel in Boston bound for New York, the seller to pay freight to New York, and the buyer to pay the insurance ; that the defendant asked if the steamer, which had that day arrived in New York, brought intelligence of any advance in the price of copper in Europe; to which the broker replied, " None that I know of ; " and the defendant, after a moment's hesitation, said that he would sell to the plaintiffs two hundred thousand pounds of copper on the terms proposed, reserving the right to add one hundred thousand on the next day if he should then elect to do so ; that the broker urged him to sell the whole of the three hundred thousand pounds then, saying that the purchase was made for exportation, and would take that quantity out of this market; but the defendant said he would not do differently from what he had proposed; and the broker then said, " Well, if that is the ultimatum, it is a sale," and, returning to his office, communicated to the plaintiffs by telegraph what he had done, informing them that he should write the particulars by the next mail ; which he did ; and made a memorandum in his books of the transaction, according to his usual custom.

This memorandum was on a page of a book headed, " Boston, December 1856," and was in the following terms :

" 9th. W. W. Goddard to T. B. Coddington & Co. 200,000 pounds Chili pig copper, 24¼ a 9 mos. from delivery, f. o. b. packet here for N. Y., seller paying freight, and buyer paying insurance to N. Y. To be 96 per cent. pure copper, and paper satisfactory to seller."

The broker testified that in this memorandum the figures denoting the quantity were written in pencil, in order to facilitate alteration in case the defendant should, as he had a right to do, elect to deliver a larger quantity. No sale note or letter relating to the sale or entry was sent by the broker to the defendant.

The plaintiffs admitted that, before sending their telegraphic despatch to the broker on the 9th of December, they had received intelligence by the steamer, which arrived that morning in New York, of an advance of a penny a pound in the price of copper in Europe; that this intelligence would have been of material importance to the defendant in determining whether to sell upon the terms proposed; and that if it had been known to him he would not have agreed to sell his copper upon those terms; and that they did not communicate it to the defendant or to the broker until after the completion of the bargain. The defendant conceded that the broker, at the time of his interview with him, was ignorant of the arrival in New York of intelligence of an advance in the price of copper; and did not contend that the broker had any fraudulent design or purpose in making the entry in his books, or fraudulently omitted in the entry any of the terms of the bargain agreed upon. But the defendant did contend that by reason of the broker's answer that no such intelligence had arrived to his knowledge, and of the omission of the plaintiffs to communicate that intelligence to the defendant, the bargain made by him with the broker as the agent of the plaintiffs was not binding upon him. And this objection was reserved for the determination of the full court, the parties agreeing that if for this reason the action could not be maintained, the verdict should be set aside and a nonsuit entered.

The defendant, being called as a witness, testified that in his interview with the broker he said that he would sell to the

plaintiffs two hundred thousand pounds of copper in case no intelligence had been received by the steamer of any advance in the price of the article in Europe, reserving the right to add one hundred thousand pounds the next day on the same terms at his option. And he contended that, if there was any verbal contract for the sale of two hundred thousand pounds of copper, it was upon this condition, and upon the further condition that the copper, if sold and delivered, should be exported by the plaintiffs, and therefore the plaintiffs could not recover.

The defendant also contended that the entry in the broker's books was not a sufficient memorandum in writing to take the case out of the statute of frauds; because no authority was shown in the broker to sign the memorandum in his behalf or in behalf of the plaintiffs; because it was not intended by the broker, when he made it, as a complete and final statement of the bargain made; because it did not state all the material terms of the bargain; because it was not signed as required by the statute; and because the broker was not authorized by the defendant to make the bargain so entered by him.

But the judge ruled that if Canterbury was a merchandise broker, and that was known to the parties, and they were dealing with him in this transaction in his capacity of broker, and made a contract through him for the purchase and sale of two hundred thousand pounds of copper, this gave him authority to bind them both by making a memorandum of the contract in writing, and signing it in their behalf respectively; that the memorandum in his book was sufficient in form to bind the parties, if he had authority to make and sign it for them; that if he did, in fact, make the entry in his book as and for a complete note or memorandum of the contract of sale made by the parties through him, such memorandum was conclusive evidence of the terms of the contract, and was to be considered and treated in all respects as if it was a written contract signed by the parties themselves; that it was in its terms a perfect and complete statement of a contract, and capable of a clear and intelligible exposition, and therefore parol evidence was inadmissible to contradict or vary the terms of it; and that even if

the defendant did in his verbal contract with Canterbury make the sale upon such conditions as he contended, he could not avail himself of either of those conditions, because they were not contained or expressed in the memorandum. To these rulings the defendant alleged exceptions.

*C. B. Goodrich & O. G. Peabody,* for the defendant. The concealment by the plaintiffs from the defendant of the material fact that intelligence of an advance in the price of copper in Europe had been received avoids, at the election of the defendant, any contract of sale. The ignorance of the agent cannot be set up by the principal, who was not ignorant. *Wilde* v. *Gibson,* 1 H. L. Cas. 615. *Anderson* v. *Fitzgerald,* 4 H. L. Cas. 484. *National Exchange Co.* v. *Drew,* 2 Macq. 103. *Fuller* v. *Wilson,* 2 Gale & Dav. 460 ; 3 Gale & Dav. 570 ; 3 Ad. & El. N. R. 58, 68, 1009. *Polhill* v. *Walter,* 3 B. & Ad. 114. *Russell* v. *Thornton,* 4 H. & N. 788. *Hazard* v. *Irwin,* 18 Pick. 108, 109. *Carpenter* v. *American Ins. Co.* 1 Story R. 57. *Fitzsimmons* v. *Joslin,* 21 Verm. 129. *Olmsted* v. *Hotailing,* 1 Hill N. Y. 317. *Elwell* v. *Chamberlain,* 2 Bosw. 230. *Crump* v. *United States Mining Co.* 7 Grat. 352. 2 Kent Com. (6th. ed.) 621 note. Smith Merc. Law, (Amer ed.) 142. Russell on Factors, 88 – 90. Parsons Merc. Law, 152. Story on Sales, § 175. Story on Agency, § 389. Paley on Agency, (4th Amer. ed.) 325.

The entry in the broker's book is insufficient, because, 1st. It does not show who is buyer and who seller. 2 Kent Com. 511. *Bailey* v. *Ogden,* 3 Johns. 399. *Sherburne* v. *Shaw,* 1 N. H. 157. *Champion* v. *Plummer,* 1 New Rep. 252. *Elmore* v. *Kingscote,* 5 B. & C. 583. 2d. It does not state in what sum, nor in whose name, nor for whose benefit, the copper was to be issued ; nor when, where or by what test the assay of the copper was to be made. 3d. It does not mention the defendant's right to add one hundred thousand pounds. 4th. It is not signed by the broker. *Goom* v. *Aflalo,* 6 B. & C. 117. *Heyman* v. *Neale,* 2 Campb. 337. *Smith* v. *Sparrow,* 2 Car. & P. 544. *Grant* v. *Fletcher,* 5 B. & C. 436. *Henderson* v. *Barnewall,* 1 Yo. & Jerv. 387. *Thornton* v. *Charles,* 9 M. & W. 802. *Sievewright* v.

*Archibald,* 17 Ad. & El. N. R. 102. *Davis* v. *Shields,* 26 Wend. 341. *Dennison* v. *Carnahan,* 1 E. D. Smith, 144. The mention of the names of the parties at the top of the entry by the broker is not a sufficient signature. *Cabot* v. *Haskins,* 3 Pick. 83. *Hawkins* v. *Chace,* 19 Pick. 505. *James* v. *Patten,* 2 Seld. 11. *Merritt* v. *Clason,* 12 Johns. 102, and 14 Johns. 484. *Davis* v. *Shields,* 26 Wend. 341. *Propert* v. *Parker,* 1 Russ. & Myl. 625. *Holmes* v. *Mackrell,* 3 C. B. (N. S.) 789. *Lobb* v. *Stanley,* 5 Ad. & El. N. R. 574.

The ruling that parol evidence was incompetent to show that the defendant agreed to the sale upon conditions not expressed in the entry was erroneous. *Davis* v. *Shields,* 26 Wend. 364 – 366. *Goodman* v. *Griffiths,* 1 H. & N. 574. *Pym* v. *Campbell,* 6 El. & Bl. 370. *Pitts* v. *Beckett,* 13 M. & W. 743. Russell on Factors, 75, 78, 79, 86.

*C. A. Welch & E. Bangs,* for the plaintiffs.

BIGELOW, C. J. We can see nothing in the facts disclosed at the trial, which shows any misrepresentation or concealment in procuring the assent of the defendant to the contract of sale set out in the declaration. Assuming the rule of law to be, as stated by the counsel for the defendant, that a contract, made by an agent in behalf of a vendee, his principal, into which the vendor was induced to enter by a representation, which was false within the knowledge of the principal, but not so within that of the agent, would be void on the ground of fraud, we do not think the evidence brings the case at bar within this principle. The broker did not make any representation or statement in behalf of the plaintiffs or as their agent. He was not asked concerning their knowledge of any fact or circumstance bearing on the contract which he was endeavoring to negotiate with the defendant. It is true that he was interrogated concerning a material fact, but the question was addressed to him individually and sought to draw out only his own personal knowledge, and not that of his principals upon the subject to which it related. Clearly it was so understood between the parties. The answer given to it, which the defendant received at the time as satisfactory, was expressly confined to the broker's own indi-

vidual information, and did not either affirm or deny any fact absolutely, or import, either directly or by implication, any knowledge of it on the part of the plaintiffs. This answer was strictly true, and did not tend in any degree to deceive or mislead the defendant. It is not a case, therefore, where an agent made any absolute representation of a material fact which he believed to be true, though it was in fact false and known to be so by his principals. Such would have been the aspect of the case, if he had stated to the defendant, in answer to his inquiry, that the steamer which had that day arrived in New York had brought no intelligence of any advance in copper. Then the cases in which the authority of *Cornfoot* v. *Fowke*, 6 M. & W. 358, has been questioned and denied, would have been applicable. *Fuller* v. *Wilson*, 2 Gale & Dav. 460; 3 Gale & Dav. 570; 3 Ad. & El. N. R. 58, 68, 1009. *Fitzsimmons* v. *Joslin*, 21 Verm. 129. But, as the case stands, upon the proof there was no affirmation or denial by the agent of the existence of this fact or even of the knowledge of his principals concerning it. There was nothing more than a statement that no such fact was known to him. This is admitted to have been true; clearly then there was no misrepresentation or concealment by which the contract can be avoided.

There can be no doubt that the broker, if he acted as the agent of both parties in completing the contract of sale, was empowered to do all that was necessary to make the bargain valid and binding in law. For this purpose he had authority to make the requisite memorandum to satisfy the statute of frauds. Rev. Sts. *c.* 74, § 4. It is not denied that this memorandum may well be made in the book of a broker. Indeed, such entry may be resorted to as the original evidence of the contract, even when bought and sold notes of the bargain, differing from each other, have been delivered to the parties. *Sievewright* v. *Archibald*, 17 Ad. & El. N. R. 102, 109.

But it is objected that the memorandum made by the broker in the present case was insufficient to take the case out of the operation of the statute, because it does not show who were the vendor and vendee of the merchandise. This would be a

fatal objection ·if it was well founded; for although a memorandum of this nature may be very brief, it must nevertheless show with reasonable certainty who were the parties to the contract, and the terms of the sale, so that they may appear from the writing itself. But in the present case the entry is perfectly intelligible and free from doubt. If it is read with reference to the book in which it is made, as an entry by a broker in the regular course of his business as an agent of third parties for the purchase and sale of goods, it clearly indicates a sale from defendant to the plaintiffs. It is susceptible of no other interpretation.

It is also objected that the memorandum is deficient, because it does not state the amount for which insurance was to be procured, nor for whose benefit, and because it contains no stipulation concerning the mode or place in which the assaying of the copper was to be had, in order to ascertain its purity. The answer to these objections is that the memorandum states with accuracy the terms of the contract as testified to by the broker, and that there was no proof at the trial that there was any agreement made concerning the particulars of the bargain which are now alleged to be omitted.

Nor does it affect the validity of the memorandum, that the broker did not include in it the stipulation made by the defendant, that he should have the right to add to the sale one hundred thousand pounds of copper the next day. This was a wholly separate and independent agreement, which in no way affected the sale actually made, and which could not be properly entered in the book of the broker, unless it had ripened into a sale by the election of the defendant on the next day to sell the additional quantity to the plaintiffs. But he made no such election, and there was therefore no contract as to that portion of the copper of which the broker was empowered to make a memorandum.

The remaining objection to the sufficiency of the entry in the book as a memorandum within the statute is that it was not duly signed by the broker or the parties. We know of no case in which it has been held that the signature of the name

of the agent through whom the contract is negotiated should appear in the writing. It is sufficient if the names of the parties to be charged are properly inserted, either by themselves or by some persons duly authorized to authenticate the document. Brokers and auctioneers are deemed to be the agents of both parties, and by virtue of their employment stand in such relation to their principals that they can sign the names of the parties to a contract of sale effected through their agency. Such authority is implied from the necessity of the case; because without it they could not complete a contract of sale so as to make it legally binding on the parties. Nor is it at all material that the names should be written at the bottom of the memorandum. It is sufficient if the names of the principals are inserted in such form and manner as to indicate that it is their contract, by which one agrees to sell and the other to buy the goods or merchandise specified, upon the terms therein expressed. It is the substance, and not the form, of the memorandum, which the law regards. The great purpose of the statute is answered, if the names of the parties and the terms of the contract of sale are authenticated by written evidence, and do not rest in parol proof. *Penniman* v. *Hartshorn*, 13 Mass. 87. *Hawkins* v. *Chace*, 19 Pick. 502, 505. *Fessenden* v. *Mussey*, 11 Cush. 127. *Morton* v. *Dean*, 13 Met. 385. *Salmon Falls Manuf. Co.* v. *Goddard*, 14 How. 446.

The only other exception taken to the ruling of the court presents a question of some difficulty. To understand it, it is necessary to recur to the positions assumed by the respective parties at the trial. The plaintiffs contended and offered evidence to show that the sale was an absolute one, and was made upon the terms set out in the written memorandum. The defendant, on the other hand, insisted and endeavored to prove that the contract of sale was a conditional one, and was not to take effect, if intelligence had been received by the steamer of an advance in the price of copper, nor unless the plaintiffs should agree to export it, if the sale and delivery were completed. In this state of the case, one of the points urged by the defendant was that the broker had no authority to bind him by the mem-.

orandum, which was offered in evidence. Among the instructions given to the jury, they were told that if the defendant did, in his verbal contract entered into with Canterbury, make the sale on the conditions above stated, he could not avail himself of either of them, because they were not contained in the written memorandum made by the broker. This instruction was strictly accurate as applied to the contract, if it was made by the authorized agent of both the parties. But upon the issue whether the broker was authorized to sign the memorandum offered in proof as the agent of the defendant, it shuts him out from the benefit of testimony which has a direct and material bearing. Upon the facts as they appear in the report of the case, the broker was not the general agent of the defendant. He had no authority to bind him, except such as was derived from the verbal contract into which he entered for the sale of the copper. He was in the strictest sense a special agent for a special and single object, and could not bind the defendant beyond the limits conferred by the precise terms of the agreement to which he assented. He was his agent only to sign a memorandum which contained the whole contract, with the terms and conditions annexed to it by him. A broker, from the very nature of his employment, has only a limited authority, when it appears, as it does in the present case, that he had no relation to a party, other than what is derived from a single contract of sale. When he applies to a vendor to negotiate a sale, he is not his agent. He does not become so until the vendor enters into the agreement of sale. It is from this agreement that he derives his authority, and it must necessarily be limited by its terms and conditions. He is then the special agent of the vendor to act in conformity with the contract to which his principal has agreed, but no further, and he cannot be regarded as his agent, unless he complies with the terms of his special authority as derived from the contract. In short, a broker is authorized to sign only that contract into which the vendor has entered, not another and different contract. If he omits to include in the memorandum special exceptions and conditions to the bargain, he signs a contract which he has no

authority to make, and the party relying upon it must fail, because it is shown that the broker was not the agent of the vendor to sign that contract. It would seem to follow as a necessary consequence that evidence of the verbal agreement into which the defendant entered for the sale of the copper was competent and material on the question of the extent of his authority to bind the defendant.

Nor does the admission of this evidence for this purpose at all contravene the rule, that parol proof is incompetent to vary or control a written contract. It is offered for a wholly different purpose. It bears solely on a preliminary inquiry. The object is not to explain or alter a contract, but to show that no contract was ever entered into, because the person who executed it had no authority to make it. The authority of an agent may always be shown by parol; but the contracts into which he enters within the scope of his authority, when reduced to writing, can be proved only by the writing itself.

The necessity of admitting evidence of the verbal contract entered into with a broker, in cases where his authority is drawn in question, is quite obvious. If such proof were incompetent, a broker who had entered into negotiations with a person might make a memorandum of a contract wholly different from that which he was authorized to sign, and thereby effectually preclude all proof that no such contract was ever made. *Allen* v. *Pink,* 4 M. & W. 144. *Pitts* v. *Beckett,* 13 M. & W. 743, 750.

*New trial granted.*

Upon the second trial, *Bigelow,* C. J. refused to allow the defendant to prove, that when the alleged contract was made, there was, in the market and among sellers of copper, a general expectation of intelligence by the next steamer of a rise in the price of copper in Europe; and, upon evidence of facts substantially the same as appeared at the former trial, refused to instruct the jury, as requested by the defendant, "that if they found it was part of the agreement of December 9th that one hundred thousand pounds of copper might be added by the defendant on the next day, the memorandum was insufficient,

by reason of its omission to include that part of the agreement;" but did instruct them, " that the broker must record, in all essential particulars, the exact contract he had authority to make; and that, if they were satisfied that he omitted any essential element of it, there was no valid contract; that the omission to state in the memorandum the defendant's right to add one hundred thousand pounds would not invalidate the contract, unless they should find that the sale of the two hundred thousand pounds depended upon the right to deliver the one hundred thousand additional on the next day; but that, if they should find that the right to deliver the one hundred thousand pounds was made a condition of the bargain, and was so far an element of it that none of it was to be binding unless this was, then the omission to insert it in the memorandum would be fatal to the action." The jury returned a verdict for the plaintiffs, and the defendant alleged exceptions, which were argued and decided in March 1862.

*H. W. Paine,* (*Peabody* with him,) for the defendant.

*E. D. Sohier,* (*Bangs* with him,) for the plaintiffs.

CHAPMAN, J.* The fact that at the time of making the contract there was a general expectation that the next steamer would bring news of a rise in the price of copper in Europe would not be pertinent to the case, if true ; and the evidence was properly excluded. This is too plain to require discussion.

The question at issue at the trial was whether Canterbury, the broker, had authority to make such a memorandum as he did. It depended on oral testimony, and was therefore a question to be decided by the jury, under instructions from the court. Upon the bill of exceptions, the question is not whether the finding of the jury was against the evidence, or the weight of the evidence, for such a question can only be raised by motion for a new trial; but it is whether the jury were properly instructed. The court are of opinion that the instructions were correct. They embrace the substance of what the defendant asked, in case the jury should find the facts as supposed by him;

---

* HOAR, J. did not sit in this case

they state the law correctly, in case the jury should find the facts as contended for by the plaintiffs; and they properly leave it to the jury to find what the agreement actually was in respect to the point in controversy. It was a question for the jury, and not for the court. *Exceptions overruled.*