## FORT *v.* CUMMINS ET AL.

[No. 10,511.   Filed October 27, 1920.]

1. BROKERS.—*Independent Contracts.*—*Validity.*—A broker may not make an independent contract in his own name.  p. 23.

2. FRAUDS, STATUTE OF.—*Sales of Goods.*—*Broker's Memorandum.*—*Sufficiency.*—A broker's memorandum of a sale of a carload of potatoes, showing a sale in accordance with previous telegraphic negotiations, copies of which were delivered to both parties, was sufficient evidence to take the case out of the prohibition of the statute of frauds.  p. 23.

3. SALES.— *Contract.*— *Terms.*— *Place of Delivery.* — Where a broker's telegram requested the price of a certain quantity of potatoes, and the answering telegram quoted a price for the potatoes "delivered," which word was included in all subsequent telegrams exchanged in the course of negotiations and in the broker's memorandum of the sale, there was a complete contract as to place of delivery, which was the place from which the initial telegraphic inquiry was transmitted.  p. 24.

4. SALES.— *Breach of Contract.*— *Action.*— *Complaint.*— *Sufficiency.*—*Allegations of Performance.*—A complaint for breach of a contract to purchase a carload of potatoes was sufficient although containing no general averment that plaintiff had complied with all the conditions on his part to be performed, where compliance appeared by specific averments.  p. 24.

From Marion Superior Court (A1,070) ; *Linn D. Hay,* Judge.

Action by Zadoc J. Fort against George Cummins and another.   From a judgment for defendants, the plaintiff appeals.   *Reversed.*

*Charles Martindale,* for appellant.

*Josh E. Florea* and *Frank Seidensticker,* for appellees.

NICHOLS, J.—Action by appellant against appellees to recover damages in the sum of $475 for the breach of a contract to purchase a carload of potatoes.

The facts as set forth in the second amended complaint, briefly stated, are as follows:   That appellant is a dealer in potatoes in Denver, Colorado; that appellees are dealers in potatoes in Indianapolis, Indiana; that

C. L. Dietz and Company are general merchandise brokers; that C. L. Dietz and Company held themselves out and were known by both appellant and appellees to be bonded brokers under the Produce Reporter Company's System, and that all contracts negotiated by them were and are governed by the trading rules and grades thereof. That on February 21, 1917, the said C. L. Dietz and Company sent to appellant, and appellant received, the following telegram:

"Indianapolis, Ind.    956 A.M. Feb. 21, 1917.
Z. J. Fort Prod. Co.
    Denver, Col.
    Wire best delivered price five cars best Colorado Whites.
                                C. L. Dietz & Co."

That the words "Colorado whites" used in the message meant Colorado white potatoes.

That on Feb. 22, 1917, appellant sent to C. L. Dietz and Company, and C. L. Dietz and Company received from appellant, the following telegram:

"Denver, Col. 2/22/17.
C. L. Dietz & Company,
    Indianapolis, Ind.
    Whites or Burbanks Five Dollars Five Cents cwt delivered.
                        Z. J. Fort Produce Company."

That afterwards and on said last-mentioned date, said C. L. Dietz and Company sent to appellant, and appellant received, the following telegram:

"Indianapolis, Ind. 12:08 P. Feb. 22, 1917.
Z. J. Fort Prod. Co.
    Denver, Colorado.
    Sold Cummins Arszman Hartsock each one car Whites Shideler two cars Whites.   Afrup cwt Delivered Befek.
                                C. L. Dietz & Co."

That said telegram was intended to mean that there

were sold to the parties named the quantities therein stated at "$5.05 per cwt. delivered confirm five cars." That on said last-mentioned date, appellant sent, and C. L. Dietz and Company received from appellant, the following telegram:

> "Denver, Col. 2/22/17
> C. L. Dietz & Co.
> Indianapolis, Ind.
> Confirm Schaub, Vondersaar Bruno Cummins Arszman Hartsock car each. Shideler two cars. Prompt shipment if cars obtainable. All your other orders are filled. Don't sell more until advised.
> Z. J. Fort Produce Company."

That afterwards, on February 22, 1917, C. L. Dietz and Company delivered to appellant and to appellees a broker's confirmation in writing and being a memorandum in writing of the terms of the purchase and sale negotiated between appellant and appellees, which memorandum in writing is as follows:

> "C. L. Dietz & Co.
> Indianapolis, Feb. 22, 1917.
> 302-303 Majestic Building,
> Sold as agents G. W. Cummins & Co. Indianapolis, Ind. For account of Z. J. Fort Produce Co. Denver Col. 1 car best sacked Col. Round White at $5.05 cwt. delivered. Prompt shipment. As per exchange of telegrams today.
> Bonded Brokers
> C. L. Dietz & Co."

That appellant promptly loaded 369 sacks of potatoes of the kind and quality specified in said order and contract, all weighing 42,620 pounds, into car PFE 7386 and delivered same to a common carrier at Denver, Colorado, receiving therefor a bill of lading to appellant, which said bill of lading was attached to draft and forwarded to an Indianapolis bank for delivery to appellees upon the payment of the amount of said draft.

That said potatoes arrived in Indianapolis, March 15, 1917, and appellees were notified of their arrival. That appellees failed or refused to accept or pay for said potatoes. That potatoes declined in value between February 22, 1917, and March 5, 1917. That the contract price for same was $2,152.31. That appellant was obliged to sell same upon the market in Indianapolis at a price of $1,703.16. That appellant had notified appellees of its intention to store said potatoes and to sell them. That demand was made of appellees by appellant for the sum of $449.15.

Demurrer to the second amended complaint being sustained, appellant abiding the ruling thereon and declining to further plead, prosecutes this appeal, assigning as error the action of the court in sustaining the demurrer to the second amended complaint.

It is contended by appellees that there is no averment in the complaint that C. L. Dietz and Company were appellee's agents duly authorized to sign the memorandum of the alleged order. There is, however, an allegation that said Dietz and Company were brokers and as such negotiated the sale, and that they furnished to the buyer and to the seller a memorandum of the sale, a copy of which is set out in the complaint.

In the case of *Butler* v. *Thomson* (1875), 92 U. S. 412, 23 L. Ed. 684, plaintiff employed certain brokers of the city of New York City to make sale for him of iron, which the brokers did, and made the following memorandum thereof:

"New York, July 10, 1867.
"Sold for Messrs. Butler & Co., Boston, to Messrs. A. A. Thomson & Co., New York, seven hundred and five (705) packs first quality Russia sheet-iron, to arrive at New York, at twelve and three-quarters (12¾) cents per pound, gold, cash, actual tare. Iron due Sept. 1 '67.
"White & Hazard, Brokers."

It was held that the contract was signed by the agent of both parties, the buyer and the seller, and was a perfect, obligatory contract upon both the parties thereto.

In the case of *Reid* v. *Alaska Packing Co.* (1903), 43 Ore. 429, 73 Pac. 337, C. M. Weber and Company; brokers of Chicago, on April 3, 1899, contracted to sell and deliver to plaintiff, for account of the defendant, 2,500 cases of salmon, delivering memorandum of the contract to defendant as follows:

"Chicago, April 3rd, 1899.
"Sold to Reid, Murdoch & Co.
For account of Alaska Fishermen Pkg. Co. Astoria, Oregon. (Then follows description of merchandise, and terms.)
(Signed)
"C. M. Weber & Co."

The court says that "enough does appear, however, to show that the contract was made by a firm of brokers, probably acting as the agents of both parties—of the defendant to sell, and of the plaintiff to buy. The memorandum delivered by them to the defendant through Patton is in form a sold note. It is probable they delivered a bought note to the plaintiff, and entered the contract in their books. If so, their signature was the signature of both parties, and, if the notes were retained without objection by both parties, the contract is mutually binding upon them, and is a good contract of sale and purchase."

In the case of *Newberry* v. *Wall* (1881), 84 N. Y. 576, it was held that a broker's note, or memorandum of sale of goods, containing the names of the vendor and vendee and the terms of sale, and delivered to both parties, makes a valid contract of sale within the statute of frauds.

In the case of *Coddington* v. *Goddard* (1860), 82 Mass. (16 Gray) 436, it was held that an entry of a

contract of sale and purchase made by a broker in his books, in the regular course of his business, which states the date, the full names of both parties, a description of the goods sold, and the terms of the bargain, although not subscribed by any one, is a sufficient memorandum in writing within the statute of frauds.

The above cases are distinguished from *Haas* v. *Ruston* (1895), 14 Ind. App. 8, 42 N. E. 298, 56 Am. St. 288, in that, in that case, the broker made an in-

1. dependent contract without the knowledge or consent of his principal and beyond the authority of his principal, making himself individually responsible, and, after discharging his individual liability, he sought to recover of his principal. A broker may not make an independent contract in his own name. 9 C. J. 524.

In the instant case the brokers by their memorandum delivered to both parties, showed a sale to appellees for account of appellant, as per exchange of tele-

2. grams which are set out, thereby, in harmony with the above authorities, taking the case out of the prohibition of the statute of frauds.

Appellees contend that there was no agreement as to the place of delivery, and that therefore the place of delivery was at Denver, Colorado, where the goods were at the time of sale. There would be merit in the contention, had the original telegram read, "Wire best price five cars best Colorado Whites," and had the answer thereto read, "Whites or Burbanks Five Dollars Five Cents cwt." Clearly, with such a telegram, the place of delivery would not have been agreed upon, and the place would have been in Denver; but the first telegram read, "Wire best *delivered* price five cars best Colorado Whites." And the answer reads, "White or Burbanks Five Dollars, Five Cents cwt. *delivered.*"

All subsequent telegrams and the memorandum included the word "delivered." Why add the word "de-

livered" if it has no meaning?  We hold that it made the contract complete as to delivery, fixing the place of delivery at Indianapolis, the place from which the initial telegram was sent.  The complaint avers the shipment of the merchandise to appellant at Indianapolis, with a bill of lading, and with instruction to notify appellees of arrival, which was done, the car was tendered to appellees, and they refused to accept without giving a reason therefor that can be considered in this case.  It appears by complaint that appellees were duly notified by appellant that he would store the potatoes and sell them for the account of appellees, holding them for all loss.  Again appellees were given an opportunity to accept as invoiced, after which the sale for the account of appellees.  This was sufficient, and appellees may not complain for they were given every opportunity to protect themselves.

It is true that the complaint contains no general averment that the appellant had complied with all the conditions on his part to be performed, but this appears by specific averments.

As we view this transaction, it presents a breach of a valid contract of sale.  The judgment is reversed, with instructions to the trial court to overrule the demurrer to the complaint and for further proceedings.