Filed November 26, 1895.

---

No. 1,435.

## HAAS *v*. RUSTON ET AL.

AGENCY.—*Broker.—Making Contract in His Own Name.—Liability of Principal.—Commission.—*A broker cannot make in his own name, without the knowledge and consent of his principal, a contract which will bind both the principal and the other contracting party, so as to render the principal liable for commissions or for damages to the agent by reason of non-fulfillment of the contract, even though he receives the benefit of the contract.

From the Vanderburgh Circuit Court.

*Garvin & Cunningham*, for appellant.

*J. E. Iglehart* and *E. Taylor*, for appellees.

Haas *v.* Ruston *et al.*

## STATEMENT OF CASE.

The appellant was the plaintiff and the appellees were the defendants in the circuit court.

The complaint alleges that the defendants are partners doing business under the firm name of the Melrose Milling Company at Evansville, Indiana, and engaged in the manufacture and sale of flour; that the plaintiff is a resident of the city of Savannah, in the State of Georgia, and that for several years prior to the grievances complained of he had acted as a broker for the defendants at the city of Savannah in the sale of flour manufactured by them; that during such time it was customary for the defendants to furnish the plaintiff, from time to time, quotations or prices at which he was authorized to sell their flour; that the prices or quotations were in all cases transmitted by letter or telegram, and that all the dealings that occurred between them were had in the same manner. It is further alleged that on the 10th day of August, 1891, the defendants wrote and sent by mail. to the plaintiff a letter which gave certain quotations or prices on certain brands of flour. Immediately following these prices the letter contains this statement in writing:

"At these prices we hope you can effect some round lot of sales for us. It is cheap property, way wheat keeps climbing up."

On the same day of mailing the letter, the defendants also sent to the plaintiff a telegram which gave briefly the prices contained in the letter, and saying to plaintiff to "push sales."

The telegram was received by plaintiff on the same day on which it was sent; the letter was received on the morning of August 12, 1891. After receiving the letter on the 12th day of August, and in pursuance to the

terms named therein, the plaintiff sold to various persons and firms in the city of Savannah about two thousand barrels of flour. The sales were made in pursuance of the authority and at the prices given in the letter and telegram, and without any notice as to a change in the prices. The plaintiff made the sales and entered into contracts for the delivery of the flour at the prices named before he received any notice of any change in the prices given in the letter and telegram. In making the sales, the plaintiff did not disclose to the parties to whom he made the same his agency therein, but he made the same upon his own credit, and that the parties to whom he made the same looked to him to carry out and complete said contract; that he did not disclose to said parties that in making said sales he acted as agent or broker for the defendants; that by making said sales the plaintiff became personally liable to the parties to whom he sold the flour for the fulfillment and carrying out of said contracts; that as soon as said sales were made he notified the defendants by telegram, addressed to them at Evansville, Indiana, of said sales, giving the names of the purchasers, the number of barrels and the prices at which the same were sold, but that the defendants refused and failed to carry out said contracts or to deliver said flour as contracted for by him; that the defendants have ever since failed to carry out their contracts, and have never in any manner completed or carried the same out; that after said sales had been made by him, and after the contracts for the delivery of the flour had been fully executed, and after the plaintiff had notified the defendants of said sales, the defendants notified the plaintiff that they would decline to carry out said contracts, and that they did decline and refused to carry out the same or to deliver said flour; that after the defendants refused

to deliver the flour to the parties to whom the plaintiff had sold the same, they purchased an equal quantity of flour elsewhere at the best prices at which they were able to secure the same, but that the said parties were compelled to pay and did pay more for the flour so purchased by them from said other parties than the prices at which the plaintiff had sold the same to them.

A particular statement of the excess paid by each of the several parties is set out in the complaint. It is further alleged that by reason of the failure of the defendants to deliver said flour, the said parties to whom the plaintiff sold the same suffered damages in the sums set out.

It is also averred that the plaintiff became personally liable to said parties for such excess, and was compelled to pay, and did pay, the same to them; that in addition thereto the plaintiff is entitled to one hundred and thirty-five dollars ($135) for commissions on the sales so made, which defendants have refused to pay.

A demurrer for want of facts was overruled to this complaint.

An answer in two paragraphs was filed, and demurrers were sustained to each of these paragraphs.

The first paragraph admits that the plaintiff was at the dates mentioned in the complaint employed and acting as broker for the defendants at the city of Savannah, in the State of Georgia, but that all of his acts were done as broker, and in no other capacity; that the plaintiff did not have possession of the merchandise attempted to be sold by him, but that it was well understood between all the parties mentioned in the complaint that the plaintiff was to find a purchaser for the merchandise of the defendants, and that he was to notify the defendants thereof, and, in case of completion of sales made by the plaintiff as broker, the

defendants were to ship the merchandise so sold direct to the several purchasers and not to the plaintiff, and that the plaintiff did not negotiate with the defendants to purchase in his own name any of the merchandise named in the complaint; that he had no authority from the defendants to buy or sell any of the goods in his own name, and that no notice was given by the plaintiff or any other person to the defendants that he claimed to make any sale or purchase in his own name; that the duty and obligation of the plaintiff ended when he found a purchaser for the goods and merchandise of the defendants and notified them of the same.

The answer further alleges that the defendants did decline to fill the orders, and that if the plaintiff did pay to the several alleged purchasers the said sums of money, he did the same voluntarily, and after notice of all the matters aforesaid, and after notice that the defendants did not recognize any obligation whatever in any of the matters aforesaid.

The paragraph further avers that the parties had had dealings in the same capacity for several years prior to the happening of the matters set out in the complaint; that for the purpose of avoiding any controversy, such as the controversy in this case, the defendants, on the 20th day of July, 1891, issued a printed price-list and circular, and upon the face of the same, in large printed type, the defendants caused to be printed the following notice :

"All the sales made by agents or brokers subject to confirmation."

And also caused to be printed in the body of said circular the following language:

"Above prices subject to change without notice."

It is alleged that by this circular the defendants intended to give notice to all of their brokers that all

Haas *v.* Ruston *et al.*

sales should be subject to confirmation; that on that day one of the printed circulars was mailed to the plaintiff, who received the same on the 22d day of July, and that, therefore, the sales referred to in the complaint, and made by virtue of the terms named in the letter of August 10, were not binding upon the defendants until they had received notice thereof and had ratified the same.

It is further averred that the sales set out in the complaint were made upon rapidly rising markets, and that said alleged sales were negotiated by the plaintiff in rapid succession, and that immediately after the first notice was received by the defendants from the plaintiff of any such sales, the defendants, by telegraph, immediately notified the plaintiff that they refused to confirm such sales.

It is not alleged that the telegrams so sent by the defendants, or any of them, were received by the plaintiff before he had consummated all of the sales.

The second paragraph of the answer alleges substantially the same facts as in the first. It sets out, however, a copy of the printed circular of July 20. As above indicated, a demurrer was sustained to each of these paragraphs.

It is apparent that the demurrers were sustained upon the theory that each paragraph of answer attempted to answer the whole complaint, but did not, in the opinion of the court below, answer that part claiming commissions, and, therefore, the two paragraphs were bad.

In consonance with this view of the court, a third paragraph of answer was filed, which attempts to answer only so much of the complaint as seeks to recover for the damages sustained by the various parties to whom sales had been made, and which were paid

by the plaintiff. It makes no mention of the circular alleged to have been sent out in July, but simply avers that the plaintiff was acting as a broker for the defendants at the city of Savannah, and that all of his acts were done as broker for the defendants, and not otherwise; that he was never employed by the defendants to act in any other capacity, and had no authority in all of the matters alleged in the complaint other than that of broker; that he did not have possession of the merchandise attempted by him to be sold, but that it was well understood between the parties that the plaintiff was to find a purchaser for the merchandise, and that he was to notify the defendants thereof, and in case of completion of sales made by the plaintiff as broker, the defendants were to ship the goods so sold direct to the several purchasers, and not to the plaintiff, and that the plaintiff did not negotiate with the defendants to purchase in his own name any of the merchandise mentioned in the complaint; that he had no authority from the defendants to buy or sell in his own name, and that no notice was ever given by the plaintiff, or any other person, to the defendants that he claimed to make any purchase or sale in his own name, and that the obligation of the plaintiff ended when he found a purchaser of the goods and merchandise of the defendants and notified them thereof; and that for these reasons the defendants did decline to fill orders given by the plaintiff, and did decline to confirm or approve sales, and declined to deliver the flour, and that if the plaintiff has paid any of the parties any sums of money, he did the same voluntarily, and after notice of all the matters aforesaid, and after notice that the defendants did not recognize any obligation whatever in any of the matters aforesaid.

Haas *v.* Ruston *et al.*

It is not averred that any of the telegrams sent by the defendants to the plaintiff declining to fill the orders were received by him prior to the consummation of the sales made by him.

A demurrer was filed to this paragraph of answer and overruled, to which the plaintiff excepted.

Both parties declining to plead further, the cause was submitted to the court upon the pleadings, and the court, upon the pleadings, found that the plaintiff was entitled to recover from the defendants the sum of one hundred and thirty-five dollars ($135.00) claimed by him in his complaint for commissions on sales therein mentioned, but was not entitled to recover any further sum.

Thereupon the court assessed the plaintiff's damages at one hundred and thirty-five dollars ($135.00), to which both parties excepted.

The plaintiff moved the court for judgment in his favor on the pleadings for the full amount alleged to be due him in the complaint, which motion was overruled; whereto he excepted.

The plaintiff thereupon moved the court for judgment in his favor on the pleadings for nine hundred and two dollars and eighty-five cents ($902.85), shown by the complaint to be due him for commissions and for damages paid to the various parties to whom he had sold flour, which motion was overruled; whereto the plaintiff excepted.

The defendants moved the court for judgment in their favor on the pleadings, which was overruled, whereto they excepted.

Judgment was thereupon rendered in favor of the plaintiff and against the defendants, for the sum of one hundred and thirty-five dollars ($135.00), to which both parties excepted.

The appellant has assigned all the rulings made adversely to him as error in this court.

And the appellees have assigned as cross-errors all the rulings made adversely to them.

Lotz, J.—It is apparent from the rulings made, and the judgment rendered, that the court below, from the facts alleged in the pleadings, reached these legal conclusions: (1) That the broker had no power to make contracts in his own name and without the knowledge or consent of his principals, which would be binding upon them in favor of the other contracting parties; (2) that as the broker had made contracts which were capable of being enforced by his principals, the principals were liable to him for his commissions; (3) that the circular letter of July 20th relating to the confirmation of sales was not controlling.

The main and controlling question in this controversy is, can a broker make a contract in his own name without the knowledge and consent of his principal, that will bind both his principal and the other contracting party?

A broker is a peculiar kind of an agent, and brokerage is a peculiar kind of agency. It is the business of a broker to negotiate contracts between others in matters of trade and commerce. He usually deals with the contracting parties and not with the things which may be the subject of the contract. He has neither interest in nor possession of the property which it is his business to buy or sell for others, and ordinarily he has no implied power to buy or sell in his own name. It is in these respects that a broker differs from a factor and from an ordinary agent.

The office and duty of a broker is stated in Domat's

Civil Law, part 1, book 1, title 17, article 1, as follows:

"1204. THE OFFICE OF A BROKER.—The engagement of a broker is like to that of a proxy, a factor or other agent; but with this difference, that the broker being employed by persons who have opposite interests to manage, he is, as it were, agent both for the one and the other, to negotiate the commerce and affair in which he concerns himself. Thus, his engagement is two-fold, and consists in being faithful to all the parties in the execution of what every one of them intrusts him with. And his power is not to treat, but to explain the intentions of both parties; and to negotiate in such a manner, as to put those who employ him in a condition to treat together personally."

In Story on Agency, the office of broker is thus defined:

"Section 28. Secondly. Brokers. The true definition of a broker seems to be that he is an agent, employed to make bargains and contracts between other persons, in matters of trade, commerce or navigation, for a compensation, commonly called brokerage. Or, to use the brief but expressive language of an eminent judge, 'a broker is one who makes a bargain for another, and receives a commission for so doing.' Properly speaking, a broker is a mere negotiator between the other parties, and he never acts in his own name, but in the names of those who employ him. Where he is employed to buy or sell goods, he is not intrusted with the custody or possession of them, and is not authorized to buy or to sell them in his own name. He is strictly, therefore, a middle man, or intermediate negotiator between the parties."

Again, section 34 of the same authority, the difference between factor and broker is thus stated:

"Section 34.    A factor differs from a broker in some important particulars.    A factor may buy and sell in his own name, as well as in the name of his principal. A broker (as we have seen) is always bound to buy and sell in the name of his principal.    A factor is intrusted with the possession, management, control, and disposal of the goods, to be bought or sold, and has a special property in them, and a lien on them.    A broker, on the contrary, usually has no such possession, management, control, or disposal of the goods, and consequently has no such special property or lien."

1 Bell Comm. p. 508, fourth edition, in comparing the duties of factor and broker, says:

"The character of factor and broker is frequently combined, the broker having possession of what he is employed to sell, or being empowered to obtain possession of what he is employed to purchase.    Properly speaking, in these cases, he is factor."

Again the relation of broker and factor is clearly stated by Story, section 109:

"Section 109.    Secondly, as to brokers.    These, as we have seen, have an incidental authority to sign the contract for, and as the agent of, both parties.    A broker employed to effect a policy, has an incidental authority to adjust losses upon it;  and, if employed to settle losses, he has authority to refer a disputed loss to arbitration.    A broker employed to buy or sell without limitation of price, has the incidental authority to bind his principal by any price, at which he honestly buys or sells.    So, a broker authorized to sell goods without any express restriction as to the mode, may sell the same by sample or with warranty.    Ordinarily, he cannot make the contract in his own name, but ought to do it in the name of the principal.    There are exceptions, however, by the usages of trade, as in cases of

policies of insurance, which are usually made in the name of the policy broker, and he may then sue thereon. So, he cannot buy or sell on credit, except in cases justified by the usages of trade. So, a broker has ordinarily no authority *virtute officii*, to receive payment for property sold by him; and, if payment is made to him by the purchaser, it is at his own risk, unless from other circumstances the authority can be inferred."

The leading case in which the distinction between a broker and that of a factor and other agents is carefully pointed out, is that of *Baring* v. *Corrie*, 2 B. and Ald. 137 (143). The court by Abbott, C. J., said : "The distinction between a broker and a factor is not merely nominal, for they differ in many important particulars. A factor is a person to whom goods are consigned for sale by a merchant residing abroad, or at a distance from the place of sale, and he usually sells in his own name, without disclosing that of his principal. The latter, therefore, with full knowledge of these circumstances, trusts him with the actual possession of the goods, and gives him authority to sell in his own name. But the broker is in a different situation; he is not trusted with the possession of the goods, and he ought not to sell in his own name." To the same effect Mr. Justice Holroyd observed, in the same case, that a factor "is a person to whom goods are sent or consigned, and he has not only the possession, but in consequence of its being usual to advance money upon them, he has also a special property in them and a general lien upon them. When, therefore, he sells in his own name, it is within the scope of his authority : and it may be right therefore, that the principal should be bound by the consequences of such sale ; amongst which, the right of setting off a debt due from the factor is one. But the case of a broker is different; he has not the possession

of the goods, and so the vendee cannot be deceived by that circumstance; and besides, the employing of a person to sell goods as a broker does not authorize him to sell in his own name. If, therefore, he sells in his own name, he acts beyond the scope of his authority, and his principal is not bound." Ewell's Evans Agency, page 4.

Again in Ewell's Evans on Agency, side page 122, the authority of a broker is most clearly stated, both as to acts authorized and prohibited. After giving fully what is the implied authority of broker, it is stated:

"A broker has no implied authority: (*a*) To buy or sell in his own name. The case of an insurance broker is an exception to this rule; he need not even state that he contracts as a broker. (*b*) To receive payment for goods sold for his principal. But an insurance broker has authority to receive payment of any loss that may occur on a policy effected by him, if the instrument remains in his hands." See also *Irwin* v. *Williar*, 110 U. S. 499; *White* v. *Chouteau*, 10 Barb. 202; *Buckbee* v. *Brown*, 21 Wend. 109; *Dugan* v. *United States*, 3 Wheat. 172; *Pott* v. *Turner*, 6 Bing. 702; *State* v. *Duncan*, 16 Lea (Tenn.) 75.

It would seem, from the authorities, that the only exception to the rule that a broker cannot contract in his own name, is in the matter of insurance policies.

The appellant cites and relies upon as holding a contrary doctrine the cases of *Knapp* v. *Simon*, 96 N. Y. 284; *Saveland* v. *Green*, 36 Wis. 612. In these cases, however, it appears that the broker made the contract in his own name at the request or with the knowledge of the principal.

The distinction between the powers of a broker and that of a factor is supported by reason as well as by authority. A factor has the possession of the goods,

Haas *v.* Ruston *et al.*

frequently has a lien upon them for moneys advanced. He has one of the indices of title. The contract is made upon his credit, and, although in his name, it may be enforced both as against himself and against his principal, and be enforced both by him and his principal against the other contracting parties. An ordinary agent, acting in the scope of his authority, may bind his principal when the contract is made for the principal's benefit, although made in the name of the agent; and the principal may enforce the contract, or it may be enforced against him. Although the contract may have been made upon the credit of the agent, the other contracting party may, when he discovers the principal, elect to pursue the principal instead of the agent, and in some instances he may pursue both. Mech. Agency, sections 558, 977 ; Lawson Cont., section 197.

It is true that the principal is bound to indemnify his agent for all acts lawfully done in the execution of his authority. This includes all expenses properly incurred, and extends to all acts done by the agent in the course of his agency in which he has incurred or undertaken a liability or sustained damages. Lawson Cont., section 179.

But the principal is not liable to the agent for acts *ultra vires*, or in excess of his authority, unless the acts have been ratified.

A broker occupies a peculiar relation to the contracting parties; he frequently represents both, and is often entitled to a commission for buying and a commission for selling in the same transaction. He has no possession that can mislead one of the contracting parties. If he were permitted to make contracts in his own name for his principal, and without the principal's knowledge,

he would be in a position to take advantage of a rise or fall in prices.

The contract being in his own name he might claim the profits, and in the event of loss cast it upon his principal. His powers might be much abused and the interests of the principal sacrificed. It is for these reasons that the policy of the law forbids a broker from contracting in his own name without the knowledge or consent of the principal.

Appellant's learned counsel contend that the circular letter of July 20, under the circumstances averred, is not controlling.

This letter and the letter and telegram of August 10th must be construed with reference to the situation of the contracting parties, and we must take into consideration the motives that actuated the parties and the means used and the purposes sought to be accomplished. The parties were several hundred miles apart—one in the city of Savannah and the other in the city of Evansville. The last letter and the telegram and the quick communication made use of indicate that the appellees were desirous of making quick sales at prices named. *Kirwan* v. *Van Camp Canning Co.*, 12 Ind. App. 1.

Again the last letter and the telegram were in writing while the circular letter was printed.

It is a familiar rule that when a contract, or contracts, and other instruments, are partly written and partly printed, and a conflict arises between such portion, the written portions are entitled to a higher consideration than the printed portions in ascertaining the intention of the parties.

Conceding, without deciding, that the circular letter is not controlling, still the contracts were not binding

Haas *v.* Ruston *et al.*

upon the appellees, for they never authorized them to be made in the name of the appellant.

If the appellees repudiated the contracts upon the ground that they had never been confirmed or accepted by them, this did not deprive them of the right to repudiate them upon another ground, especially if they learned of such cause subsequently to the first repudiation.

It may be said that the act of the broker in taking the contracts in his own name was an act in the interest of his principals, and they ought not be permitted to take advantage of it. It is true that the appellant pledged his own credit for the benefit of the appellees, and it seems like a hardship to permit them to profit by an act done for their benefit. Whilst a seeming hardship results in this particular instance, yet the integrity of the rule that a broker cannot make a contract in his own name binding upon the principal, without his knowledge, must be upheld. If this rule should be broken down or varied, far greater injuries might result.

The claim for commissions is affected by the same infirmity that affects the claim for damages on account of the failure to fulfill the contracts. They both spring from the same source, from contracts which, under the circumstances averred, have no binding force upon the appellees.

It is true that the contracts resulted in furnishing the appellees with customers for their flour, but to say they are liable for commissions and are not liable for the damages, is to draw two inconsistent deductions from the same premises.

Here again a hardship results, but it arises from the necessity of maintaining the integrity of the rule above stated.

Judgment reversed on the cross errors, with instructions to sustain appellees' motion for judgment on the pleadings.

Filed November 26, 1895.