**UNITED STATES of America,**
**Appellant,**

v.

**GREAT LAKES PIPE LINE COMPANY,**
**Appellee.**

**No. 17427.**

United States Court of Appeals
Eighth Circuit.

Feb. 28, 1964.

David I. Granger, Attorney, Tax Division, Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., Lee A. Jackson, Robert N. Anderson, Attorneys, Dept. of Justice, Washington, D. C., F. Russell Millin, United States Atty., Kansas City, Mo., and Calvin K. Hamilton, Asst. U. S. Atty., Kansas City, Mo., on the brief, for appellant.

Leon B. Seck, Kansas City, Mo., Ralph M. Jones of Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, Mo., for appellee.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

This is an appeal by the United States from a judgment in the District Court in favor of Great Lakes Pipe Line Company in a suit brought to recover federal excise taxes in the amount of $340,461.05 plus interest which it was claimed had been illegally assessed and collected for the period between July 1, 1953 and July 1, 1957, inclusive. The tax was assessed under the provisions of 26 U.S.C.A. § 3460(a) of the Internal Revenue Code of 1939 and 26 U.S.C.A. § 4281 of the Internal Revenue Code of 1954, the provisions of which are substantially identical. They imposed [1] on the transporter of petroleum products by pipeline a tax equivalent to 4½% of the amount paid for all such transportation. However, § 3460(c) of the 1939 Code and § 4283 of the 1954 Code provided an exemption

---

1. The tax in question was repealed by the Tax Rate Extension Act of 1958, P.L. 85–475, 72 Stat. 259.

as follows: (quoting from the Internal Revenue Code of 1954)

"§ *4283.  Exemption for oil transported within premises of a plant*

"For the purposes of section 4281, the term 'transportation' shall not include any movement through lines of pipe within the premises of a refinery, a bulk plant, *a terminal,* or a gasoline plant, *if such movement is not a continuation of a taxable transportation.* \* \* \*" (Emphasis supplied.)

The matter for determination by the trial court was essentially a factual one of whether the movements of petroleum by pipeline in question here came within the exemption. Appellee successfully contended below that the movements were not a continuation of a taxable transportation and the District Court ordered judgment for appellee. The United States now asks us to find the District Court erred in holding that the movements in question were exempt.

Judge Becker's well-considered opinion is reported at 216 F.Supp. 181. It contains a full recitation of the stipulation of facts upon which the case was originally submitted, together with a discussion of the testimony subsequently received. In order to avoid unnecessary repetition and the prolongation hereof, reference is made to the District Court's opinion as published. We restate here only a skeletal structure of the facts.

Appellee, an interstate common carrier, is in the business of transportation by pipeline of various grades of gasoline, distillate and other refined petroleum products from refineries located principally within the States of Oklahoma and Kansas to terminal destination storage points on its system located within the States of Kansas, Nebraska, South Dakota, North Dakota, Iowa, Minnesota and Illinois. The originating shipper consigns his products to one or more of the terminal storage destination points

of the appellee's system and not beyond. There are no through bills of lading issued by the original shipper for transportation beyond the terminal destination points. Shipments through the appellee's pipeline system from originating points are commingled in transit with complete loss of identity of ownership. Appellee's storage tanks are equipped with devices for circulating the contents from time to time to maintain a uniform and proper blend, color and grade of product to enable the consignees to meet state specifications and market requirements. A consignment by a shipper may remain in storage tanks at a terminal point for an indefinite period varying from a few days to several months. Basic kinds and grades of petroleum products are converted into additional grades to meet the market requirements of those shipping from terminal storage. Conversion is accomplished by mixing and blending of products and by adding materials such as identifying color, lubricants, solvents and other additives. Each terminal is equipped to deliver seventeen or more kinds and grades of petroleum products as required by the shippers to meet their market demands. Upon order by the consigning shipper, the petroleum is moved from the storage tanks to a facility at the terminal known as a "loading rack", at which the petroleum is loaded into railroad tank cars and motor tank trucks for transportation to its ultimate destination. For its services at the terminal, the appellee receives a flat 5¢ per barrel. This includes mixing, blending and coloring as well as billing and loading into tank trucks and tank cars, such charge being in addition to the transportation rate between the refinery originating point and the various terminal destination storage points.

By letter ruling dated June 1, 1949, to the appellee the Commissioner allocated one-half of the 5¢ a barrel revenue to the clerical work of preparing and filling out the bills of lading (and not subject to the tax on transportation of oil by pipeline) and one-half to the loading

process, to which he considered the tax applicable. In this suit the appellee seeks to recover the tax which it claims was improperly collected. The case presents the single issue of whether the local within-the-premises movement from terminal storage tank into a truck or tank car at the terminal is "a continuation of" the trunk-line transportation of a shipment originating at a refinery.

After an extensive and care-taking analysis of the legislative history of the statutes involved and of the treasury regulations and the changes therein, and distinguishing the cases upon which the government relies, especially McKeever v. Fontenot, 5 Cir., 1939, 104 F.2d 326, which case pre-dates the 1942 enactment of § 3460(c) of the 1939 Code, and which apparently resulted in Congress passing the exemption statute, the District Court held that the charge involved herein was not taxable, being exempt under § 4283, supra, and § 3460(c). We are in complete accord with the District Court's opinion and shall, therefore, avoid any useless repetition thereof.

The United States here asserts that the District Court was in error because (1) the movement was a continuation of a taxable transportation; (2) the oil movements involved were "essentially a continuation of prior taxable transportation"; (3) the facts "characterize the movement here in issue as an integral part of the prior taxable transportation" and thus taxable; (4) the cases relied on by the District Court dealt with either on-premises movements where there had been no prior taxable transportation or with on-premises movements following a separate and independent process, such as refining; (5) the District Court failed to make proper inquiry under the statute in that it failed to consider or determine the essential nature of Great Lakes' terminal operations.

▆ It seems obvious to us that the Congressional intent in passing § 3460(c) of the 1939 Code and § 4283 of the 1954 Code was to exempt from taxation transportation or movement within the premises of a refinery, bulk plant, terminal or gasoline plant provided such movement was "not a continuation of a taxable transportation". The test under the sections is not whether this within-the-premises movement is an "integral part of", a "necessary incident to", or an "essential incident to" trunk-line transportation as argued by the government, but is whether the physical movement is actually a "continuation of" that transportation which was, of course, taxable. In other words, the Congress did not want to include in the exemption the transportation or movement of petroleum or petroleum products through a pipeline where it entered into and traversed the local exempt premises. Logically, where that occurred, there should be no exemption from tax. Where there is a break or cut-off, however, so that there no longer is a continuation of the original movement, the exemption should be applicable. Here there was a definite break in the transportation. The products were billed only to the terminal and were there to be kept in storage, blended, colored, mixed, graded and reloaded in tank cars or trucks in accordance with the owner's orders as to time and designated place. That was such a break as prohibits a finding that there was a "continuation" of the prior transportation. Cases relied on by the District Court and cited in its opinion support such conclusion.

What constitutes a "break" in the continuity of movement of goods so that their character may be changed from interstate to intrastate has received the attention of the Supreme Court in many cases. We think the Supreme Court's reasoning and conclusions in such cases are applicable here.

Susquehanna Coal Co. v. Mayor and Council of City of South Amboy, 1913, 228 U.S. 665, 33 S.Ct. 712, 57 L.Ed. 1015, involved the shipment of coal from Pennsylvania to South Amboy, New Jersey. From there it was intended for further shipments to ports in other states or

countries but not definitely determined, the coal being stored at South Amboy awaiting orders or means of transportation for orders already received. The Supreme Court there held that the storage was more than a mere incidental interruption and, quoting from the opinion of the District Court, explained at pages 666 and 669 of 228 U.S., at pages 713 and 714 of 33 S.Ct., 57 L.Ed. 1015:

" ' * * * Neither the agents at the mines nor at Philadelphia knew for which particular customers the coal thus forwarded to South Amboy, was intended. Complainant had a number of regular customers east of New Jersey, to whom it promised to make deliveries on monthly contracts; the exact requirements of such customers, in tonnage and kind of coal, were known only to the New York agents. These agents from time to time totaled such requirements plus other orders for coal, and issued their requisition based upon such totals, to the Philadelphia agents. Such requirements and the shipments made thereunder, varied in tonnage and kind of coal. At South Amboy complainant had an agent who, upon the orders of the New York agents, superintended the loading upon such bottoms of the kind and amount of coal required for designated customers. When so loaded, the master of the bottoms issued bills of lading in the name of the complainant as shipper, and particular persons as consignees.'

\* \* \* \* \* \*

"It is clear, we repeat, that such trade could only be accommodated through the storage of coal somewhere, and plaintiff in error availed itself of the conditions to put the storage in New Jersey.

"*The coal, therefore, was not in actual movement through the State; it was at rest in the State, and was to be handled and distributed from there.*" (Emphasis supplied.)

Chicago, Milwaukee and St. Paul Ry. Co. v. State of Iowa, 1914, 233 U.S. 334, 34 S.Ct. 592, 58 L.Ed. 988, also involved coal, there shipped from Illinois to Davenport, Iowa, to be held for sale and reshipment. Holding that there was a break in the interstate shipment when the coal was received and held at Davenport, even though subsequently reshipped in the same cars in which it arrived, the Supreme Court stated at page 343 of 233 U.S., at page 594 of 34 S.Ct., 58 L. Ed. 988:

" \* \* \* But the fact that commodities received on interstate shipments are reshipped by the consignees, \* \* \* to other points of destination, does not necessarily establish a continuity of movement or prevent the reshipment to a point within the same State from having an independent and intrastate character."

In Atlantic Coast Line R. Co. v. Standard Oil Co. of Kentucky, 1927, 275 U.S. 257, 48 S.Ct. 107, 72 L.Ed. 270, petroleum products were transported by sea from the State of Louisiana and Mexico to storage points on the coastline of Florida. From the storage points the products were eventually transported to various destinations in Florida in much the same manner as in the instant case. There the Supreme Court had "no hesitation" in ruling that the continuity of the interstate nature of the commerce was broken at the storage points.

Minnesota v. Blasius, 1933, 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131, involved cattle consigned from one state to a stock market in another, there held and subsequently distributed. The court stated at page 9 of 290 U.S., at page 37 of 54 S.Ct., 78 L.Ed. 131:

" \* \* \* But, by reason of a break in the transit, the property may come to rest within a State and become subject to the power of the

State to impose a non-discriminatory property tax. * * * The 'crucial question,' in determining whether the State's taxing power may thus be exerted, is that of 'continuity of transit.' Carson Petroleum Co. v. Vial, 279 U.S. 95, 101 [49 S.Ct. 292, 73 L.Ed. 626]."

The court also said at page 12 of 290 U.S., at page 38 of 54 S.Ct., 78 L.Ed. 131:

"* * * Here the original shipment was not suspended; it was ended."

And see also Independent Warehouses, Inc. v. Scheele, 1946, 331 U.S. 70, 67 S. Ct. 1062, 91 L.Ed. 1346, citing Blasius, supra.

In State v. Continental Oil Co., 1944, 218 Minn. 123, 15 N.W.2d 542, certiorari denied, 323 U.S. 803, 65 S.Ct. 562, 89 L. Ed. 641, the Supreme Court of Minnesota held that petroleum products transported by the Great Lakes Pipe Line Company [appellee in the instant case] and held in its storage tanks in Minnesota for exactly the same purposes for which the oil was held in the instant case were subject to a personal property tax imposed by the State of Minnesota. In so holding, the Minnesota court stated at page 546 of 15 N.W.2d:

"In numerous cases the rule has been settled that property transported in interstate commerce, which has come to rest and is held in storage either for sale or for use or for distribution, is not *in transit*, but is part of the mass of the property within the state and as such is subject to state taxation, although it was intended at the inception of the interstate movement to reship the property from the point where the interstate movement was interrupted to a point beyond as its ultimate destination." (Citing many cases, including Supreme Court cases referred to supra.)

The court also stated at page 549 of 15 N.W.2d:

"Our conclusion is that the gasoline came to rest at the tank farm so as to become a part of the mass of the property within the state and subject to state taxation. Under the circumstances, reshipment of the gasoline by rail to other points in the so-called northern area did not establish a continuity of movement, and consequently the gasoline was not *in transit* at the time the tax in question was imposed."

In attempting to reject the above case as being persuasive support for the District Court's conclusion here, the appellant refers to the fact that two justices dissented and a third did not participate. The trial court there had held that storage in the terminal tanks was for the convenience of the carrier and that accordingly the oil was in interstate transit and not subject to state taxation. The dissenting opinion referred to is based on the premise that the questions involved were questions of fact rather than law and that there was sufficient evidence to sustain the findings and accordingly the judgment of the lower court should have been affirmed. Such argument by appellant fails to impale in the instant case because the trial court here found that there was a break in transit and that the movements involved were not a continuation of a taxable transportation and were accordingly exempt and its findings are amply supported in the record.

Most of the Supreme Court cases referred to supra and in State v. Continental Oil Co., supra, deal, as does the instant case, with fungible goods. There is complete loss of identity. The original shipments are "not suspended; [they are] ended" at the designated terminal. The shipper is unaware of where and when it will order reloading. The conclusion of the trial court that there was a break in the continuity of movement so that the operation comes well within the exemption provided for oil transported within a terminal is affirmed.