INDIANA DEPARTMENT OF STATE REVENUE *v.*
THE BOSWELL OIL COMPANY.

[No. 870A126. Filed April 12, 1971.]

*Theodore L. Sendak,* Attorney General, *Hugh R. Couch, Larry J. McKinney,* Deputies Attorney General, for appellant.

*T. Stephen Phillips, Frost & Jacobs,* of Cincinnati, Ohio, *Richard H. Riegner, White, Raub, Reis & Wick,* of Indianapolis, for appellee.

BUCHANAN, J.—STATEMENT OF THE CASE AND FACTS—This appeal concerns an action brought by the plaintiff-appellee, Boswell Oil Company (Boswell), to determine whether its operations in Indiana qualify it as a "broker" under the Indiana Gross Income Tax Act, I.C. 1971, 6-2-1-1, Ind. Stat. Anno. §64-2601(n) Burns Cum. Supp. (1970), herein referred to as "the Act," thereby entitling it to favorable tax treatment accorded to brokers under the Act.

Boswell brought suit to recover alleged excess gross income taxes collected for the years 1964, 1965, and 1966 in the amount of $2,554.37, plus interest as allowed by statute. The case was tried to the court without the intervention of a jury and judgment awarded to Boswell as prayed for in its complaint. At the request of defendant-appellant, Indiana De-

partment of State Revenue (the Department), Findings of Fact were entered by the court as follows:[1]

1. Plaintiff, The Boswell Oil Company, is an Ohio Corporation which is admitted to do business in the State of Indiana.

2. This Court has jurisdiction of the parties to this action and of the subject matter of this action.

3. The plaintiff operates in the State of Indiana by matching refinery-suppliers of residual fuel oil and consumers of such oil. The plaintiff's employee, Charles D. Mayer, calls on consumers of residual fuel oil in Indiana and seeks out refinery-sources of supply to cover the consumers' requirements.

4. The plaintiff negotiates fuel oil prices with the refinery and with the consumer in order to effect a transaction.

5. The average refinery cost of residual fuel oil is 7 cents to 9 cents, and the plaintiff adds a mark-up to the cost of normal $\frac{1}{4}$ cent to $\frac{1}{2}$ cent per gallon.

6. The plaintiff receives a commitment from a refinery that the refinery can supply gallonage at a specific price before the plaintiff takes an order from an Indiana consumer.

7. Orders for fuel oil are placed by Indiana consumers with the plaintiff in Cincinnati, Ohio, and the plaintiff in turn places identical orders with the refineries; the plaintiff does not place an order with a refinery before it has received an identical order from an Indiana consumer.

8. The fuel oil is transported directly from the refinery to the Indiana consumer by refinery truck or public carrier, the plaintiff never taking possession of the fuel oil.

9. The refinery supplying fuel oil knows the consumer to whom the oil is sold and shipped, and the consumer knows the refinery-source from which the oil originates.

10. The refinery invoices the plaintiff for oil transported and the plaintiff, in turn, invoices the consumer, adding a mark-up.

11. The plaintiff does not purchase and maintain in Indiana a store of fuel oil for sale or investment.

12. Within the fuel oil industry, refineries market residual fuel oil through brokers as contrasted with marketing directly to the consumer through their own facilities.

---

1. Findings 13 and 14 are not included because they are not pertinent and are not challenged in this appeal.

ISSUES—Both parties treat as the sole question for determination whether Boswell is a broker as that term is used in the Act and therefore entitled to be taxed at the rate of 2% of its gross earnings, rather than be taxed at the rate of ½ of 1% of its gross income.

The Department timely filed its Motion to Correct Errors alleging that the decision of the court was not sustained by sufficient evidence, was contrary to law, and that certain of the findings were faulty. The court then overruled the Motion and denied a new trial.

The Department seeks reversal on the grounds that Boswell's operations in Indiana were not those of a broker because contracts were not negotiated for others but for itself as principal; two contracts were entered into in which Boswell was a principal party; suppliers looked to Boswell for payment after residual oil was sold to consumers; credit was extended by Boswell on occasions; the consumer looked to Boswell for delivery; and Boswell acted in its own name. The Department also contends that Findings of Fact numbered 1 to 12 do not contain the ultimate facts put into issue by Boswell's complaint as they are evidentiary only, and as such are inconsistent with the holding against the Department.

Not to be outdone, Boswell contends that it matches suppliers and consumers, negotiates prices, does not accept an order until it has a commitment to supply, does not maintain a store of goods and never takes possession of the oil, and deals with suppliers who know the consumer using the oil and with consumers knowing the supplier of the oil. As to the question of the insufficiency of the Findings of Fact because they are evidentiary in nature, Boswell contends that, taken together and not separately, the Findings do adequately describe the ultimate fact of Boswell's operation as a broker within the meaning of the Act.

DECISION—It is our opinion that Boswell is a broker within the meaning of the Act and is therefore entitled to be taxed at the rate of 2% of its gross earnings.

The Act uses the term "broker" but does not otherwise define this term. Burns § 64-2601 (n) *supra* provides as follows:

"In the case of banks, trust companies, building and loan associations, investment companies regulated under the federal investment company act of 1940, as amended, *brokers*, dealers in securities, finance companies, dealers in commercial paper, and persons engaged in the business of lending money or credit the term 'gross income' shall be deemed to mean gross earnings, but only in respect to that part of the total gross income of such persons which is derived from the businesses and activities enumerated in this subsection." (Emphasis supplied.)

The Department has issued certain Instructions which relate to the use of the word "brokers" in the Act.

While Boswell finds some solace in the wording of these Instructions, both parties have relied on Indiana case law for the definition of a "broker." Therefore, we need not decide the legal effect of such Instructions.

We recognize that the courts of this state have taken opposing views as to construction of taxation statutes. In the case of exemptions from tax statutes, we have consistently held that statutes will be strictly construed against the party claiming the exemption. *Gross Income Tax Division* v. *National Bank & Trust Co.* (1948), 226 Ind. 293, 79 N. E. 2d 651. It has also been consistently held, however, that in case of doubt as to the meaning or applicability of the Indiana Gross Income Tax Act (the Act), it will be construed against the state and in favor of the taxpayer. *Gross Income Tax Division* v. *L. S. Ayres & Co.* (1954), 233 Ind. 194, 118 N. E. 2d 480; *Gross Income Tax Division* v. *Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N. E. 2d 415. In the case under consideration, we are not concerned with an exemption from the Act, and therefore we feel bound to resolve any doubts against the state and for the taxpayer.

Conceptually, we are here presented with the problem whether the requisite characteristics of a broker exist by virtue of the operations of Boswell in Indiana.

We recognize that we must indulge in all reasonable presumptions in favor of the rulings and judgments of a trial court. *Pennsylvania R. R.* v. *Mink* (1966), 138 Ind. App. 311, 212 N. E. 2d 784. Further, "this court in reviewing appellant's specification of error that the decision of the trial court is not sustained by sufficient evidence is limited only to that evidence most favorable to the appellee." *Bradley* v. *Phelps* (1970), 147 Ind. App. 349, 260 N. E. 2d 894. Rule TR. 52(A). Therefore, in determining whether Boswell is a broker we are bound by the Findings of Fact and reasonable inferences therefrom.

The Department relies heavily on the vintage case of *Haas* v. *Ruston* (1895), 14 Ind. App. 8, 42 N. E. 298, to provide a definition of a "broker":

> "A broker is a peculiar kind of an agent, and brokerage is a peculiar kind of agency. It is the business of a broker to negotiate contracts between others in matters of trade and commerce. He usually deals with the contracting parties and not with the things which may be the subject of the contract. He has neither interest in nor possession of the property which it is his business to buy or sell for others, and ordinarily he has no implied power to buy or sell in his own name. It is in these respects that a broker differs from a factor and from an ordinary agent."

Counsel have cited no cases, and we can find none, to indicate that *Haas* is no longer the law in Indiana.

As we see it, Boswell meets this definition in that, according to the Findings of Fact, it matches suppliers of residual fuel oil and consumers of such oil, negotiates fuel prices, causes the fuel oil to be transported directly from the refinery to the consumer, maintains no store of oil in Indiana for sale or investment, and the refiner and the consumer each know to whom the oil is sold and shipped. So far, Boswell has negotiated a "contract" between others and has dealt with contracting parties and has no interest in nor possession of the property. Thus, Boswell has performed the essential function of a broker, which is to negotiate contracts

between others, and, unlike a factor, has not taken possession, management, or control of the goods. *Robertson* v. *State* (1934), 207 Ind. 374, 192 N. E. 2d 887.

The Department's view is that Boswell is invoiced by the refinery and, in turn, adds a markup and invoices the consumer and that this amounts to two contracts in which Boswell is a principal party. Further, it has "no implied power to buy or sell in his [its] own name" and has not negotiated a contract for others.

Close scrutiny of the *Haas* case discloses the sole question decided was that a broker can make a contract in his own name only *with* the knowledge and consent of his principal. In the instant case, the court specifically found that both the consumer and the supplier of oil knew the identity of each and orders between the consumer and supplier were matched with full knowledge thereof. Thus, by the holding of *Haas,* Boswell is clearly a broker in this respect.

*Haas* may also be a plow which has unearthed another snake for the Board in that it goes on to say, at pages 18 and 19:

> "Ordinarily, he [the broker] cannot make the contract in his own name, but ought to do it in the name of the principal. There are *exceptions,* however, *by the usages of trade,* as in cases of policies of insurance, which are usually made in the name of the policy broker, and he may then sue thereon. So, he cannot buy or sell on credit, except in cases justified by the usages of trade." (Emphasis supplied.)

Finding No. 12 states that within the fuel oil industry, refineries market residual fuel oil through brokers as contrasted with marketing directly to the consumer. The clear implication is that this is a usage of the trade in the business of supplying fuel oil to consumers.

As we construe the Findings of Fact, Boswell performed the essential functions of a broker by making a bargain for contracting parties without taking possession, management, or control or title of the goods involved. Further, it did so with

the knowledge and consent of the contracting parties negotiating one contract between them of an extended nature rather than two contracts.

We end this discussion by observing that there are many kinds of brokers[2] and that a broker, to be a broker, need not be an every-day, "garden" variety. Each case must be considered in the light of the peculiar facts involved.

In response to the Department's argument that the Findings of Fact do not contain the ultimate facts and are evidentiary in nature, we point to Rule TR. 52, which would only permit us to set aside the Findings if "clearly erroneous." In our opinion, the Findings of Fact, taken together, do sustain the conclusion of law that Boswell is a broker. *Jones* v. *Greiger* (1960), 130 Ind. App. 526, 166 N. E. 2d 868.

The judgment of the trial court is therefore affirmed.

Sullivan, P.J., Lowdermilk and Robertson, JJ., concur.

NOTE.—Reported in 268 N. E. 2d 303.