**INDIANA STATE BOARD OF TAX COMMISSIONERS, Carleton L. Phillippi, Taylor I. Morris, Jr., Durwood S. Strange, Members of the Indiana State Board of Tax Commissioners, Appellant (Defendant Below),**

v.

**STANADYNE, INC., Appellee (Plaintiff Below).**

No. 3–1081A256.

Court of Appeals of Indiana, Third District.

May 24, 1982.

Rehearing Denied August 5, 1982.

---

**5.** O.A. 1(D) and I.C. 34–1–58–1 and 2 would permit us to issue a writ of mandate if the Board failed to perform a duty required by law.

Linley E. Pearson, Atty. Gen., David C. Weigel, Deputy Atty. Gen., Indianapolis, for appellant.

Derald D. Kruse, Kruse, Kruse & Cherry, Auburn, for appellee.

HOFFMAN, Presiding Judge.

Stanadyne, Inc., is a Delaware corporation which owns a private warehouse in Garrett, Indiana, known as the Stanscrew Distribution Center. Among its various operations, Stanadyne manufactures a line of plumbing fixtures in North Carolina and Ohio, which it then markets nationally. These fixtures are produced on a "forecast of need" basis and then shipped by private carrier to the Garrett warehouse. This warehouse is operated as a clearing facility at which products are temporarily stored while awaiting distribution in accordance with specific customer orders. Less than three percent of these goods are ultimately delivered to customers within the State of Indiana.

On its personal property tax return filed with the State of Indiana for the date of March 1, 1976, Stanadyne reported a total book value of $4,811,468 for its Garrett inventory. In addition, the company claimed an exemption for a portion of this inventory in the amount of $976,138.[1] The Indiana State Board of Tax Commissioners (the Board) subsequently initiated an administrative review of Stanadyne's return pursuant to statutory authority.[2] At an additional hearing during this review,[3] Stanadyne sought exemption for the entire Garrett inventory, i.e., for $4,811,468. In its final determination, however, the Board reduced the exemption allowance to $424,-000. The Board's denial of an exemption for the total book value of the inventory resulted in an additional tax liability of $54,140, which Stanadyne paid under protest. Stanadyne then instituted an appeal of the Board's decision in the DeKalb Superior Court.

On the basis of facts stipulated into evidence and motions for summary judgment

---

1. This exemption was claimed under the Commerce Clause to the United States Constitution and IC 1971, 6–1.1–10–30 (Burns 1978 Repl.).

2. IC 1971, 6–1.1–14–10 (Burns 1978 Repl.).

3. This hearing was requested by Stanadyne and granted by the Board pursuant to IC 1971, 6–1.1–30–12 (Burns 1978 Repl.) and IC 1971, 4–22–5–1 (Burns 1982 Repl.).

filed by each of the parties, the trial court ordered the Board to allow the exemption for the entire inventory and to return the amount paid under protest. The Board now appeals that judgment on both statutory and constitutional grounds.

IC 1971, 6–1.1–10–30 (Burns 1978 Repl.), reads:

"Nonresident's property in interstate commerce.—(a) Subject to the limitations contained in subsection (c) of this section, personal property is exempt from taxation if:

(1) The property is owned by a nonresident of this state;

(2) The property has been shipped into this state and placed in the original package in a public or private warehouse for the purpose of transshipment to an out-of-state or a within-the-state destination as evidenced by the original bill of lading; and

(3) The property remains in the original package and in the public or private warehouse.

(b) Subject to the limitation contained in subsection (c) of this section, personal property is exempt from property taxation if:

(1) The property has been placed in the original package in a public or private warehouse for the purpose of transshipment to an out-of-state destination as evidenced by the original bill of lading; and

(2) The property remains in the original package and in the public or private warehouse.

(c) An exemption provided by this section applies only to the extent that the property is exempt from taxation under the commerce clause of the Constitution of the United States."

The Board contends that the trial court's conclusion that Stanadyne had met the "original package" and "original bill of lading" requirements of the above statute is contrary to the evidence and is the result of an erroneous application of the law.

Regulation 16, § 3.3A(1) of the State Board of Tax Commissioners defines original package as "the box, case, bale, skid, bundle, parcel or aggregation thereof bound together and used by the seller, manufacturer or packer for shipment." Ind.Admin.Rules & Reg. (6–1.1–3–9)–32A(1) (Burns Code Ed.). The parties stipulated that individual items were sealed in separate packages with a group of such packages then being packed in larger boxes. Boxes of identical items were then aggregated together and placed on pallets for transportation to the Garrett warehouse by Stanadyne's private trucking division. On occasion large boxes of different fixtures were rearranged on separate pallets to meet specific customer orders; however, the large boxes themselves were rarely opened in so doing. Though the concept of "original package" has not been interpreted by the Indiana courts, there was sufficient evidence from the facts above from which the trial court could have determined that most of the products involved remained in their original packages from the point of manufacture to the point of final destination. As a matter of law, it cannot be said that such determination was erroneous. The Board cannot on appeal challenge facts to which it stipulated previously.

The stipulation of facts further establishes that since the fixtures are produced on a "forecast of need" basis, the purchasers thereof are unknown at the time of manufacture. As such a bill of lading is attached to the goods when shipped indicating a destination of the Stanscrew Distribution Center in Garrett. The Board contends that such bill of lading fails to evidence storage in the private warehouse for the purpose of transshipment to another destination as required by IC 1971, 6–1.1–10–30 above.[4] This contention is apparently based in reliance upon *State Bd. of Tax Com'rs. v. Philco-Ford Corp.* (1976), Ind.App., 356 N.E.2d 1379, and the Board's interpretation

---

**4.** It should be noted that Acts 1981, P.L. 63, Sec. 4, effective January 1, 1982, deleted the phrase "as evidenced by the original bill of lading" from subsection (b)(1) of IC 1971, 6–1.-1–10–30, thereby possibly eliminating similar controversies in the future.

of its Regulation 16, *supra*, which states in part:

"Personal property of nonresidents of the state shipped into the state and placed in the original package in a public or private warehouse for the purpose of transshipment to an out-of-state or within-the-state destination, or personal property of residents or nonresidents of the state placed in the original package in a public or private warehouse for the purpose of transshipment to an out-of-state destination, is exempt for personal property tax purposes, providing the original bill of lading is attached which indicates the ultimate destination.

\*    \*    \*    \*    \*    \*

"Ultimate destination is herein defined as the place where the property is to finally come to rest and be used in a manufacturing process or kept available for use in a manufacturing process or held for resale in the ordinary course of business."

However, this ultimate destination requirement was held invalid by the Supreme Court of Indiana in *St. Bd. Tax Comm'rs. v. Carrier Corp.* (1977), 266 Ind. 615, 365 N.E.2d 1385, as it added to the statute an element not contained therein.

In *Carrier, supra,* Justice Pivarnik cited the case of *Appeal of Martin* (1974) 286 N.C. 66, 209 S.E.2d 766, in determining whether the bill of lading must evidence the ultimate destination. The Indiana Supreme Court quoted favorably from *Martin* as follows:

" 'The proposed interpretation would result in a trap for the unwary taxpayer and severely hamper legislative policy expressed in the statute. Moreover, if the ultimate consignee is known to the consignor at the time the goods are shipped into this state and placed in a public warehouse, no logical reason occurs to us why the taxpayer would not ship the goods direct. Why place them in a warehouse?' 209 S.E.2d at 775." 266 Ind. at 618, 365 N.E.2d at 1387.

While it should be noted that in both *Carrier* and *Martin* the bill of lading form contained an express provision that the goods were placed in the warehouse for transshipment, such intent appears equally obvious in the case at bar. In fact, the parties stipulated that customer orders were processed through Stanadyne's computer department near Chicago, Illinois; that the Stanscrew Distribution Center is operated as a private warehouse clearing facility; and that at the additional hearing before the Board, the Group Controller for the appellee testified that all of the inventory assessed as of March 1, 1976, was actually transshipped out of the Garrett warehouse. The shipping of goods to a distribution center at which no retailing is conducted clearly evidences an intent to transship such goods to another destination. The bill of lading used by Stanadyne is therefore sufficient to entitle the company to the statutory exemption.

As noted above, however, this statutory exemption "applies only to the extent that the property is exempt from taxation under the commerce clause of the Constitution of the United States." IC 1971, 6–1.1–10–30(c). In *State of Minnesota v. Blasius* (1933) 290 U.S. 1, at 8–10, 54 S.Ct. 34, at 36–37, 78 L.Ed. 131, the United States Supreme Court held that:

"The States may not impose direct burdens upon interstate commerce, that is, they may not regulate or restrain that which from its nature should be under the control of the one authority and be free from restriction save as it is governed in the manner that the national legislature constitutionally ordains. This limitation applies to the exertion of the State's taxing power as well as to any other interference by the State with the essential freedom of interstate commerce. Thus, the States cannot tax interstate commerce, either by laying the tax upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts, as such, derived from it. Similarly, the States may not tax property in transit in interstate commerce. But, by reason of a break in the transit, the property may come to rest within a State and become subject to the

power of the State to impose a nondiscriminatory property tax.

\* \* \* \* \* \*

"Where property has come to rest within a State, being held there at the pleasure of the owner, for disposal or use, so that he may dispose of it either within the State, or for shipment elsewhere, as his interest dictates, it is deemed to be part of the general mass of property within the State and is thus subject to its taxing power."

See also Arthur Walter Seed Co. etc. v. McClure, Treas., etc. (1957), 236 Ind. 666, at 676, 141 N.E.2d 847, at 851. Though the trial court in the case at bar entered a specific conclusion of law that the personal property at issue was in interstate commerce, the Board contends that the goods were nevertheless subject to the Indiana ad valorem property tax as the result of such break in transit. In support of this contention the Board claims the trial court ignored the import of the following: (1) the fact that Stanadyne used a private carrier; (2) the fact that Stanadyne used a private warehouse; (3) the fact that the bill of lading used by Stanadyne did not indicate on its face that the goods covered thereby were for transshipment; and (4) the fact that a portion of the products were rearranged pursuant to specific customer orders at the private warehouse.

In State of Minnesota v. Blasius, supra, it was held that:

"Formalities, such as the forms of billing, and mere changes in the method of transportation do not affect the continuity of the transit." 290 U.S. at 10, 54 S.Ct. at 37.

In The Pipe Line Cases (1914) 234 U.S. 548, at 560, 34 S.Ct. 956, at 958, 58 L.Ed. 1459, it was established that the fact that the goods being transported belonged to the carrier thereof is not conclusive against such being transportation among the states. It has further been noted that:

"It seems clear that the mere fact that articles are carried in private conveyances does not prevent the transaction becoming interstate commerce." (Citations omitted.) 10 A.L.R. 512.

In Arthur Walter Seed Co. v. McClure, supra, the court denied a claimed exemption where the company maintained a private warehouse from which it sold seed corn in competition with other local businesses. It was held in Arthur Walter that:

"The commerce clause does not extend to articles previously in interstate commerce but which are placed in the shipper's warehouse far in advance of the date of pretended delivery, so as to permit the shipper, without local tax liability, to engage in a warehouse business for his personal profit and benefit. The right of subsequent diversion of previous interstate orders to new customers at appellant's discretion gives appellant's warehouse the attributes of a local business." 236 Ind. at 678, 141 N.E.2d at 852.

The factual distinctions are obvious between Arthur Walter and the instant case. Stanadyne did not compete with local businesses by making in-warehouse retail sales, and the fixtures remained in the warehouse for the sole purpose of being matched with and shipped according to specific orders. The use of modern marketing methods cannot be said to constitute a sufficient rest from transit so as to remove the goods from interstate commerce. In fact, Arthur Walter Seed Co., supra, went on to acknowledge that " '[i]f the interruptions are only to promote the safe or convenient transit, then the continuity of the interstate trip is not broken....' " 236 Ind. at 672, 141 N.E.2d at 849. See Champlain Co. v. Brattleboro (1922) 260 U.S. 366, 43 S.Ct. 146, 67 L.Ed. 309. In Swift and Company v. United States (1905) 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518, a similar issue was addressed where cattle were shipped to a stock yard for subsequent sale. Justice Holmes noted in Swift that:

"... commerce among the States is not a technical legal conception, but a practical one, drawn from the course of business. When cattle are sent for sale from a place in one State, with the expectation that they will end their transit, after purchase, in another, and when in effect

they do so, with only the interruption necessary to find a purchaser at the stock yards, and when this is a typical, constantly recurring course, the current thus existing is a current of commerce among the States[.] . . ." 196 U.S. at 398–399, 25 S.Ct. at 280.

■ Neither does the fact that the bill of lading used by Stanadyne fails to name the ultimate destination of the goods result in a loss of the exemption. In *Western Oil Refg. Co. v. Lipscomb* (1917) 244 U.S. 346, at 349, 37 S.Ct. 623, at 624, 61 L.Ed. 1181, it was stated that:

"Ordinarily the question whether particular commerce is interstate or intrastate is determined by what is actually done and not by any mere billing or plurality of carriers, and where commodities are in fact destined from one State to another a rebilling or reshipment en route does not of itself break the continuity of the movement or require that any part be classified differently from the remainder. As this court often has said, it is the essential character of the commerce, not the accident of local or through bills of lading, that is decisive. (Citations omitted.)

The final factor raised by the Board in its constitutional attack on the trial court's findings goes directly to the "original package" argument addressed above. The trial court entered a specific conclusion of law stating that the original package doctrine has no application to an exemption under the Interstate Commerce Clause. The Board agrees with said conclusion in its brief, but contends that such repackaging is illustrative of the alleged break in transit. As noted above, however, there was sufficient evidence from which the trial court could have properly concluded that Stanadyne complied with the original package requirement of the statute. Article I, Section 8 of the United States Constitution imposes no additional requirements under such doctrine. Therefore, the trial court correctly applied both the exemption stat-

ute and the commerce clause in determining Stanadyne was entitled to an exemption.

■ The Board finally contends that the trial court erred in granting a larger exemption than that which was claimed by Stanadyne on its return. It has long been established that an exemption unclaimed is forever lost. This general rule has been codified in IC 1971, 6–1.1–11–1 (Burns 1978 Repl.) which states:

"An exemption is a privilege which may be waived by a person who owns tangible property that would qualify for the exemption. If the owner does not comply with the statutory procedures for obtaining an exemption, he waives the exemption. If the exemption is waived, the property is subject to taxation."

Stanadyne claims that it did not waive the exemption, but rather that it merely claimed an incorrect amount. As such, it is argued that the Board has the power to increase as well as decrease exemption claims.[5] However, IC 1971, 6–1.1–11–1, *supra*, requires compliance with the statutory procedures for obtaining an exemption. IC 1971, 6–1.1–10–31 (Burns 1978 Repl.), states:

"Nonresident's property—Claim.—A person who:

(1) Is required to file a personal property return;

(2) Has personal property in a warehouse on the assessment date of any year; and

(3) Wishes to claim the exemption provided under either section 29 or section 30 [6–1.1–10–29 or 6–1.1–10–30] of this chapter;

*shall report on his personal property return,* in the manner prescribed by the state board of tax commissioners, *the true cash value of the property for which the exemption is claimed."* (Emphasis added.)

In addition, it should be noted that exemptions from taxation are not favored by the law, and that tax statutes are therefore

5. Stanadyne claims that such power is analogous to the Board's power to change assess-

ments pursuant to IC 1971, 6–1.1–15–4 (Burns 1978 Repl.).

strictly construed against the party claiming an exemption thereunder. *Ind. Dept. of State Revenue v. The Boswell Oil Co.* (1971), 148 Ind.App. 569, 268 N.E.2d 303. Stanadyne is therefore permitted an exemption, but only to the extent claimed on its return.

This cause is accordingly remanded to the trial court for proceedings consistent with the decisions herein.

Affirmed in part and reversed in part.

STATON, J., concurs.

GARRARD, J., dissents with opinion.

GARRARD, Judge, dissenting.

While I agree with the majority view that it was error to grant a larger exemption than that properly claimed by Stanadyne, I feel I must dissent to the grant of the exemption.

The majority acknowledges that exemptions from taxation are not favored and should be strictly construed. *Indiana Dept. of State Revenue v. The Boswell Oil Co.* (1971), 148 Ind.App. 569, 268 N.E.2d 303.

As I understand the question posed by this litigation, the property was taxable unless imposition of the tax was forbidden by the Commerce Clause of the Constitution of the United States. More precisely, the question is whether the state could allowably determine that the property had come to rest sufficiently to interrupt its character of being in interstate commerce.

The majority quotes from *State of Minnesota v. Blasius* (1933), 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131. Yet in that case the Court held that the cattle received at the St. Paul stockyards were properly taxable.

That decision, together with the decisions in *Independent Warehouses, Inc. v. Scheele* (1947), 331 U.S. 70, 67 S.Ct. 1062, 91 L.Ed. 1346 and *United States v. Great Lakes Pipe Line Co.* (8th Cir. 1964), 328 F.2d 79 lead me to conclude that upon the facts before us the State of Indiana was not constitutionally prohibited from imposing a nondiscriminatory *ad valorem* property tax upon the goods in the warehouse. That being so, it

was the duty of the trial court to sustain the tax despite the unquestionably interstate character of the ultimate sales.

I would therefore reverse the grant of exemption.